Drops, A1-2-15-05-01, equal to the state of Illinois, Lincoln, PA, on the 5-J-10-1, suspended at the top of the line. All units on behalf of the President of the Commonwealth of the District of Wisconsin, all units on behalf of Lincoln, PA, please proceed to the table. May it please the Court, Counsel, my name is Doug Johnson, and I'm here on behalf of the defendant, Dr. Mandoline. Mr. Mandoline is currently serving 39 years in the Department of Corrections for his murder conviction and an aggravated arson. I'd like to address issue number two. Start there. I believe that we've shown that Mr. Mandoline's defendant's rights to counsel were violated in this case. Some crucial time limits I'd like to point out. At 7.34 a.m., Mr. Mandoline found himself in the interrogation room. At 8.18, the trial court found he had unequivocally invoked his right to counsel. And the state argued and the trial court found at 11.30, Mr. Mandoline had reinitiated after that invocation. And at 11.37, the trial court found that Mr. Mandoline waived his right to counsel, knowingly. Points I'd like to make are first. He did not voluntarily reinitiate under the facts of this case. You would have to agree the trial court made the call, and it's the trial court's credibility determination that's really at issue here, manifest way to the evidence regarding that issue. Even if you believe the facts as the trial court found them, I believe that this court will do a de novo review as to the ultimate conclusion that the trial court came to. And I believe under that standard still, it is very clear that the defendant did not waive his right to counsel or did not reinitiate at 11.30. Secondly, I believe the credibility findings by the court were manifestly erroneous. And so I believe under both those situations, the record is clear that he did not reinitiate. The trial court, during the argument when Mr. Thielander was representing the defendant, had no change where Mr. Thielander repeatedly said, this is just not fair. And the trial court said, there is a body of case law where the police have overridden a defendant's rights, and yet a defendant can still voluntarily reinitiate. Do you disagree with that? Under the facts of this case, absolutely, I disagree with that. We are not arguing as the state frames our issue. They say, well, you're just saying a defendant can never reinitiate. And absolutely, no. Mr. Thielander conceded that, but he said, in this case, it's different because of the number of times they violated the defendant's rights. In no circumstance could you ever deem this voluntary. That's pretty much the argument, right? That is pretty much Mr. Thielander's argument, and I would agree with Mr. Thielander in both situations and in that argument. But here, what's crucial, this case cannot be considered as a case where the defendant said, I want an attorney, and the officers respected that and stopped. In that situation, all we'd have to do later is look at what did the defendant say? Did he knock on his prison cell, his holding cell, and say, hey, I do want to talk to you? We just have to look at what happened there. But in this case, we have to look at everything that happened after 8-18. What did he say? What did the defendant say? What did they say to him? And what happened here? And I have some of those examples because that's what shows us, under the totality of the circumstances, what's happening to the defendant is he is learning, I don't have a right to counsel. I certainly, and not only am I saying he didn't know his right. Under this situation with these detectives, he didn't have a right to counsel. He wasn't going to get one. Well, ultimately, at 10-30, though, he learned that he did, right? At 10-30, despite the prior fact that they ignored it on four or five different occasions, at 10-30, I think it was, the detective said, okay, fine, you've got a right to counsel. We'll stop. That is the state's argument. I don't believe Miranda, when we read the warnings, it doesn't say you have a right to counsel, but you've got to ask four or five times. When they stopped, who's to say they stopped because he asked for an attorney? Maybe they were tired. Maybe they wanted to go out and grab something. He's sitting there thinking, well, they're going to be back. How is he? He knows what happened the times before. He knows what happens when he said, first, at 8-18, I didn't torch the car. Now I'll call my lawyer. You want to pin me down? Now I'll call my lawyer. And Melati has said, we're trying to figure out what happened. Don't we look at the circumstances regarding the initiation separately from waiver? You're kind of mixing everything together, that everything impact, everything, your argument is everything that led up to that alleged re-initiation or now established re-initiation should be taken into consideration. But that's not what the court has said. They're separate issues. Absolutely they are. They are separate issues. They are separate issues. You're confusing or conflating everything that happened before with that re-initiation, which the court, and again, problematic here. The conversation is not recorded. But he heard the testimony of the officers and he heard the defense version. First, I do believe that they are related, the issues of the re-initiation and the waiver. But they're very related. And I think what we have to look at is was there badgering going on? Was there prodding? And that's what they're doing with the defendant. What was the prodding? The prodding was, first of all, when you ask for an attorney and we say, and we ignore it because we go to something else, when you say. . . Which other case says that's prodding? If we look at the Dorsey case, for example, the language there, I think, is some of the best language consistent with Illinois law where they say, the line there is, treating the delayed product of police badgering as valid re-initiation would serve no purpose. It would exalt form over substance and thwart rather than implement the goal of the court in Edwards. Those are cases where the police never recognize the defendant's right, correct? I don't hear they. . . We're saying I don't believe they recognize the right at 1026 a.m. Well, didn't Malatia say, you asked for an attorney, we're going to stop questioning you? And then there was further testimony that when he was outside taking a smoke break, that he said, he started asking them questions, and they said, we cannot talk to you because you asked for an attorney. He said, the defendant, they say, now this is where I believe the credibility here comes in. I mean, we're taking someone off camera, but I won't go into that now. Even accepting what Your Honor has pointed out, the defendant allegedly said, what's going on with me? And they said, you've invoked your right to an attorney, we can't talk to you. At that point, this defendant doesn't believe he has, he's been badgered. He knows that if I say anything to talk to these guys, it's going to be do it. I'm not getting out of here. I've got two choices. I'm sitting in that room, which I've already made very clear is torture to me. That is not, however, what he said on the tape following the reinitiation. It isn't. There's nothing in there. As the trial court commented in ruling, there's nothing in there to corroborate his version of events about what happened during that cigarette break. But he, what he did say, they asked him that at the hearing. Why didn't you say something? Why didn't you go, hey, this isn't what our deal was? He said, that wasn't part of the deal. They told him, he said, they told me what I had to say. And it makes sense because why would this person who has been fighting for their attorney constantly, and then even at one point saying, you're talking to me and I asked you for an attorney and you never came back and asked me about that. He doesn't have rights. So when he's out there and then he comes back in and says, yes, I waive my right, yes, do you want to talk to us, telling me, he says, I will talk to you. Not I want to talk to you, I will. Because he knows it will be futile. He's been badgered. They have beaten him down. This, we can't have this be the law. When you use the term badgering again, what's the badgering? The badgering is, help us, Todd. Help us, Todd, make it better on yourself. Todd, you're digging a hole you can't get out of. Todd, we can't help you if you continue to do this. Aren't those the types of questions that have been routinely approved as being non-badgering type of questions, non-coercive, open-ended questions? Please give us help. To piggyback on that, I mean, he's there from 730 to 1130 before this happens. So we're talking about this torture that takes place over four hours. And again, the case law, and we've got cases where people are in custody for much longer than four hours. When we look, though, at those cases, those are cases where the defendant hasn't invoked his right to counsel. And absolutely, police officers, we all understand, police officers can lie. They can do anything, basically, except hit you. I understand that. But we have to look at this case as one where the defendant invoked, and there aren't a lot of them. There aren't a lot where he invokes and is completely ignored with a video camera looking on. I submit there aren't going to be many with the video law either. But here, this is something we don't see very often. In the Winsett case, it was a situation where the police officers ignored the defendant and continued to talk. And you look at the fact that that wasn't even an issue. It was understood that is going to be suppressed. Shouldn't your argument be this is a case of first impression? This is a case where the police misconduct is so egregious that regardless of the other case law cited by the state, in a situation like this where the police repeatedly overwrite the defendant's rights, you should look at everything, not just merely who reinitiates. Shouldn't that be the argument? I think that's a good argument, obviously. But I think here there is no reinitiation. That's an argument that would have to be taken up by a higher court, though, because we're bound to follow precedent from the United States Supreme Court and our Supreme Court. Well, but I don't think it's an issue of first impression. I think it's egregious conduct that may be something we haven't seen before, but the principles are the same. What quarrel do you have factually with the trial court's findings that the defendant reinitiated? Okay, if we're going to, I don't believe, I have to have a quarrel because I believe before you. Of course you do, because that's your burden. You have to show that it's against the matter's weight. Well, even if we look at what happened on the video and we accept that is what happened on the video, and even if we believe the police officers, I still believe there's no valid reinitiation here. But if I have to quarrel with the credibility findings, we'll start out by quarreling by saying you're kidding me. They took him to the one place, this person who has fought for his right for an attorney, and he goes off to the one place where there's maybe two, there's not a video that can capture what's going on. How can we believe that? Well, a video would be a video, though, not an audio. Outdoors, right? First of all, I believe there shouldn't be a video and audio in a... Well, they could have taken a tape recorder with them. I mean, the technology that exists today is just... Exactly. Or a cell phone recorder. Exactly. So if we're going to do this and something so crucial is going to happen, let's have a cell phone, and let's get it all on tape, and then we don't have to argue about this. But they take him out. I think we will promote policy thought. We'll promote police departments. Okay, everybody wants to smoke, apparently. We'll have our smoking area be unmonitored where we can't see them. We can't promote that type of conduct. Is your argument that the evidence did not establish, by clear and convincing evidence, that the reinitiation, because of failure to record, was voluntary? That's what the statute says. That gets into the fourth argument we raised. And absolutely, you had to record everything in this murder investigation. It wasn't long out there, but it's what happened out there. And to get into that, you look at the second smoking break in the morning. Were what the officer is saying to this defendant calculated to elicit an incriminating response? Absolutely. So let's record that. Yes, we can talk to you, Todd. You can go home, Todd. Well, they wouldn't have admitted if we'd taken what they said. We can only talk to you, Todd, if you go in and waive. After supposedly he said, what do I have to do to talk to you? Yes. Okay, so I mean, again, that's not custodial interrogation. He's in custody, for sure, but that's not interrogation if you believe the police officer. If you believe the police officer, though, isn't what they said, you can go in there. We're going to have a custodial interrogation. We can go in there, Todd, and talk to you if you waive your rights. They're trying to get an incriminating response. And I would also point to the second smoking break, which I think is extremely interesting with Detective Chodzinski in the afternoon. They go out, and the second was in the morning. I'm sorry, that would be the fourth one? Oh, the fourth. Oh, the second one in the afternoon, the fourth one. They go outside, off camera, and Chodzinski, and you believe the facts as they're laid out, as Chodzinski testified, defendant says, where are the detectives? Where are Mouncey and Eboy? And then Chodzinski says, they are at the scene meeting with investigators and meeting with evidence technicians. They're going to find out how the fire started, and when they come back, you should be honest with them. That's right out of the Christian burial speech. I mean, that's the guy saying you have to tell them what you know. That's calculated to get an incriminating response, and lo and behold, it did. How can that not be recorded? How, if we have a law that suggests we have to see any type of potential coercion on camera, how can that not be recorded under our law? Because then he comes in, and almost immediately, there is the statement that will be used against him in getting convicted. Not only do you have a failure to record, you also have a failure to even write a report for one of those. Yes, you do. Even for one of the smoking breaks in the morning, you don't even have a report. That was where, allegedly, there was an issue about when he even mentioned Dean Kekos, if I'm pronouncing that right. Kekos came up, Kekos or Kekos came up, and Malatia acknowledged that, yes, that did come up during the conversation. Yes, he did. But I think Mr. T. Lander impeached him on that point about when it really happened. I think he had to correct it. Yes, exactly. So these were crucial moments that were not recorded. Going back to the second issue, I wanted to get into, as Your Honor pointed out, the waiver under the other analysis. Did he waive a knowing right? I submit to Your Honors, he didn't have a right. They weren't going to give him one, and he didn't know he had a right. Look at what happened, and this was not, I don't believe responded to at 743, if I could have one minute. At 743 a.m., the defendant says, if I had a lawyer, would I still have to sit here? The answer, obviously, yes. That's 743. That's telling him what a lawyer is going to be for him. And then with everything else, he can't waive a knowing right because he didn't know he had a right. And I submit even further, he didn't have one. Along that line, in your white brief, in argument two, you first talk about whether there was initiation, then you talk about the knowing waiver. In argument three, that goes to the statements, generally a voluntariness of overall voluntariness, not just the voluntariness of the waiver at 1136. Yes, Your Honor, we argue the waiver. Because the yellow brief kind of conflates the two. I mean, argument three really, in your yellow brief, really hones in on the 1136 waiver. And we did that because in the state's response, they responded to argument two and three together. And so the reply brief addressed it the way they did. Okay, so I just want to be clear. You're arguing two separate things then. You're arguing that the waiver at 1136 was not knowingly voluntary. Yes, Your Honor. And you're also arguing separately that the statements overall were not knowingly voluntary. Were not voluntary. Yes, Your Honor. Okay. Anything else? Just one comment. Mr. Teelander, at oral argument, conceded that the police did not have to afford the defendant a phone call. Do you recall that? I wouldn't quarrel with that. Pardon me? I don't believe they have to hand him a phone the moment he asks for an attorney. But they have to halt once he asks for an attorney. And that also gets into the language from Dorsey that says the only way a waiver is knowing is if the defendant knows that when he says, I want an attorney, the interrogation will halt. I ask that question because Article 103 actually does, it's a state right to a phone call, to call an attorney, or a family member to contact an attorney. And clearly he requested that. In the context of the recording law argument in Article 4, I believe I would not agree with Mr. Teelander's concession. But I don't. Well, I'll leave it at that. All right. You'll have time for one more question. Thank you. Mr. Seneca, you may proceed. Good morning, Your Honors. May it please the Court. My name is Randy Seneca, and I represent the people of the city of Illinois in this matter. If I could just briefly touch on the recording issue to begin with. There's a statute, as Your Honors know and the defendant knows, that is in effect for the recording of all murder interviews. Defendant did not bring that statute to the trial court's attention pre-trial or post-trial. I've been practicing appellate law for 20 years. If there were ever a case for procedural default, this is it. You have to afford the trial court an opportunity to rule on the applicable statute in order to preserve that issue for appeal. There's no way to do that at this point. You can't go back in time and have the hearing that he could have had pre-trial on this recording issue. There are specific mechanisms under that statute by which an unrecorded statement can still be admitted to evidence in a murder prosecution. For example, if the recording is not feasible or if, for example, the unrecorded statement is otherwise deemed to be voluntary. By what standard? Deemed to be voluntary by what standard? I'm not sure that the statute spells out. I believe it's clear and convincing. Okay, clear and convincing. Well, we weren't afforded the opportunity to make that argument pre-trial about these statements. And even if we had been, Your Honor, the trial court found that the defendant's re-initiation was knowingly voluntary and his statements were reliable. So even if the trial court had been afforded the opportunity to rule on this issue pre-trial, which it wasn't, he would have ruled in our favor. And in point of fact, there was no custodial interrogation undertaken outside of the interrogation room. There were brief interchanges between the defendant and the police officer as the police officers testified and the trial court believed regarding what was going on with the investigation. And the most important one, the re-initiation that took place on the second smoke break, was immediately recorded upon their coming back to the interview room. And the trial court believed the police officers and disbelieved the defendant about the re-initiation. There's no way for this court to go back in time and reassess their credibility. It's the trial court that heard the testimony and disbelieved the defendant and believed the police officers. Does this set a nice precedent for police departments to have non-video areas for all smoking defendants? No, Your Honor. Especially smoking defendants who invoke the right to counsel. No, it doesn't, Your Honor, but it's not really precedent for that point because the statute was not raised. This argument, like I said earlier, if there was a case for procedure of a fault ever, this is it. Actually, the statute states that the presumption of inadmissibility of a statement made by a suspect at a custodial interrogation at a police station or other place of detention may be overcome by preponderance of the evidence. I was incorrect that it was voluntarily given and is reliable based upon intelligent circumstances. So there's the burden. We weren't given the opportunity to shoulder that burden because the issue wasn't raised below in the context of the statute. Had we been given that opportunity, I have no doubt we would have won based on the credibility and determination that's rendered by the trial court in this matter. What effect should the fact that the state, the police, repeatedly overruled the defendant's rights have on our analysis as to whether or not the waiver or the reinitiation was voluntary? Well, would you agree the defendant had a right to a phone call? He did, and Your Honor pointed to the statute, and the statute says within a reasonable amount of time. There's no case law that's saying what a reasonable amount of time is so far under that statute. He requested a phone call at around 8 o'clock, and by 1130 he had waived his right again after reinitiating. So I don't know if those three hours are... Well, there was more than one discussion. Wasn't it right before the last break that there was a conversation about having a cigarette and making a phone call so he could contact his attorney? Wasn't there that discussion just before break? Which break, Your Honor? Well, you know the record as well as anybody in the room. Wasn't there a discussion about making a phone call just before the break? The 1030 break? Yes, Your Honor, and I thought I had said that. Between 8 o'clock and 1030 he had requested a phone call. Just before, and what happened? He's been in custody or at the station now for several hours. Right. And your argument is that's still within a reasonable period of time. He's in the interview room, and he was not, there's no question, he wasn't afforded a phone call. The statute says you are to be afforded one with a reasonable time, but that statute doesn't set forth any consequences for the violation of it. I mean, we're talking about... Well, the consequences are prosecution of a police officer for official misconduct, right? Sure. Or suppression. Is suppression not the remedy? It's definitely not a remedy contemplated by the statute. Well, the statute is intended to make sure that police honor the suspects,  that the right to an attorney is honored, that the right to remain silent is honored, that all of these rights shall be honored, and the statute is put in place to ensure that, correct? I'm totally with you here, Your Honor, yes. And the police overrode the right to a phone call. And how about this, the right to be informed of the nature of the arrest. Was he informed of the nature of the arrest upon his arrest? It depends when you're saying he was arrested. I believe he was arrested at the end of all the interviews, later in the afternoon, and he was just in custody. The trial court found he was in custody. Right, custody arrest. When was he informed of the nature? At the end of his interview, after he had confessed. What about the statute, 103-1A, that requires that a person arrested without a warrant be informed of the, quote-unquote, nature of the offense on which the arrest is based? When he was arrested, he was informed of the nature after he confessed. That it was a fire that would be covered by insurance. That's essentially what he was told over the entire conversation. He was told that during the interrogation, but it's our position that he wasn't arrested until he confessed. He was in custody, but those are two distinct things. Counsel talked about prodding and badgering. Yes, Your Honor. Is telling a person or leading a person on to believe that this is just a property crime, could that be considered prodding or badgering? Not by my estimation, no, Your Honor. What the defendant tried to raise below, and what he's trying to raise here, even though he's not admitting it, he wants a bright-line rule that if defendants' rights under Miranda and Edwards are violated, that he can never reinitiate. That argument was raised by his defense counsel below at 332 of the recorded proceedings at Lines 1 through 11. Mr. Tienlander also acknowledged that there can be circumstances where there's a proper reinitiation. But here, and his argument was the police didn't honor his invocation at any point in time up until 1036. Well, right, and then they did. And then he was left alone for an hour, and then the circuit court found as a factual determination that he reinitiated. So let's say he reinitiated, but isn't that still something that we should sit on about the fairness of his waiver? And the circuit court did consider it. The circuit court said it weighed in favor of suppression, the fact that the Texas, in this case, unfortunately, ignored defendants' rights under Miranda and Edwards for those two hours. The circuit court took it into consideration and rendered credibility determinations against this defendant. Defendant's biggest problem, other than the fact that he's guilty, is that what he told the police was wrong. What else does a defendant's guilt have to do with whether or not his rights were overwritten? What relevance is his guilt? None whatsoever. But his biggest problem was the story that he told the circuit court about what the police told him. He told the circuit court that the police told him he could leave if he just talked. That was such an outrageous story and so directly contradicted by the video evidence, defendant could not be believed regarding the reinitiation. It just couldn't happen. How do you distinguish this case from Dorsey? From which case? Dorsey. Dorsey, Your Honor, that defendant was held overnight. He was interrogated for five and a half hours after invoking his rights under Miranda and Edwards and repeatedly told things like, if you don't confess, we're going to think of other things to charge you with. Or if you don't confess, your mom's going to be upset with you. Or what would your mom want you to do? Those types of things. And his right to counsel was never acknowledged by the police officers. At no point. They got tired themselves of questioning him, put him in a cell to think for some hours, and then said, oh, by the way, when we come back, we're going to take another run at you. Would you agree that facts in Dorsey are obviously different, but badgering doesn't have to be that type of outlandish behavior. It can be subtle. It can be a lie that's perpetuated throughout the course of an interview. Would you agree? I wouldn't, Your Honor, but I don't think that's what we're really talking about here. The United States Supreme Court said in Smith v. Illinois, in the absence of a bright-line rule that you just discussed, in the absence of such a bright-line prohibition, the authorities through badgering overreaching deliberate, subtle, unintentional, might otherwise wear down an accused and persuade himself, notwithstanding his earlier request for counsel's assistance. In here, you have someone who's in custody who believes, based upon what the police has told him, that at the most it's a property crime. It's going to be covered by insurance, arson, car, vehicle arson. And his request to an attorney, and not only this, are you familiar with the case where the police actually have a relationship with the defense attorney and know him personally, and then they don't do anything to honor his rights? But why could that not be considered a subtle form of persuasion? Because in this case, they did honor his rights. And those are the facts that we're left with. They honored his rights by telling him that somebody died? And this is not going to be covered by your insurance before you reinitiate? Just let me tell you, all that stuff about the insurance, all that stuff about this is don't worry about it, that's off the table, was he ever told that? Your Honor, he doesn't have a right to be told that no one died. I'm not sure where we're getting that from. Well, how about you're getting this from the nature of the offense, the nature of the arrest? When the arrest occurred at the end of all interviews and he confessed, he was a participant in the nature of the charge he was being arrested for. And he's not entitled to be told the nature of the offense before he confesses to it? Not before he's arrested, yes. They can lie to him, there's a lot of case law, they can lie to him about a whole host of things. They didn't in this case, but they could have. There's no question about that. The cases that you're talking about with lies and deception do not involve cases where a defendant has involved. I'm not sure that. Deception goes to voluntariness, generally speaking, do you agree? Yes. Lies and deception goes to voluntariness. Yes. Shouldn't that also go to whether or not a re-initiation is voluntary, whether or not somebody is fully aware of the circumstances or the quote-unquote nature of the offense? The circuit court in this case took into account all of the statements that were made by both the defendant and the police officers in determining that this subsequent re-initiation was voluntary and that the waiver of his rights was voluntary. Did the circuit court take into consideration the fact that the defendant was never truly informed of the nature of the arrest until after he confessed? Was that considered? I don't believe so, Your Honor. I don't even believe the defendant has raised that. Should it be considered? Yes, it should, but he wasn't arrested until the end of the interview after he confessed. So it wasn't. He's in custody. Yes, he is. And the statute, I'm talking about the statute, and the interplay between the statute and honoring the defendant's rights, he's never told the nature of the offense until after he confesses. I can't disagree with that, Your Honor, and as I've been saying, the nature of the offense was only pertinent after he'd been arrested, and this defendant was not arrested until after he confessed, which is late in the afternoon. And this is not an argument that the defendant has raised in his brief. If Your Honors have any further questions. After an arrest without a warrant, he's entitled to be told about the nature of his arrest, and the trial court found that he was arrested. I believe the trial court found he was in custody starting at 848 when he tried to run. The argument is custody is different from an arrest. It's very different. Arrest denotes formal procedure. Because they don't know the nature of the charges until after he's confessed. Well, they know some of the tactics. They do, but they don't know if they're going to charge him with murder or if they're going to charge him with... They know it's more than just an insurance case. Yes, yes. People would ask that Your Honors affirm the defendant's conviction. Thank you, Mr. Pasoneko. Mr. Johnson, rebuttal argument? Very briefly. Perhaps you could start off by addressing the State's argument regarding procedural default on the statutory issue. First of all, we have asked in our reply brief that plain error be applied. If the court finds that that is waived, I would say that in the written motion by defense counsel, they did make reference to the fact that the statements weren't recorded. But I admit to this court that it was not a key point. They didn't raise the statute and say these must be recorded. But I believe plain error would apply. Also, I can't make clear enough that we aren't asking for a right-line rule. Absolutely, under certain facts, a defendant can reinitiate. With regard to custody and arrest, I believe the law is pretty clear that custody is what we need to look at in this situation. And not only did the trial court find in 818 that the defendant was in custody, but also at 743, the defendant was told, if I have a lawyer, would I still have to sit here? He asked that question. And the officers told him, obviously, yes. He was in custody, so he's entitled to all the rights that it gave him. Lastly. You didn't argue, though, in your briefs, that defendant's Illinois statutory rights were violated regarding the phone call or right to notice of charges, correct? No, that specific argument. I believe it would be encompassed in the argument we raised. Well, certainly Mr. Thielander argued before the trial court that the defendant requested a phone call and that was never honored. Exactly. And all I would concede is that the moment he asked for a phone, he doesn't have to get his cell phone and then be able to make a call. But under these circumstances, he asked not only for a lawyer repeatedly, he asked for a phone repeatedly. And I believe Your Honor started with what happened right before the break. He indeed did say, can I get a hold of my lawyer then, if I'm going through this then. He did make that request, and he had previously around that time asked for a phone. He also previously had said, can I get a cigarette? Can I get a cell phone to call my lawyer? And they said, you can have a cigarette. Which not only doesn't respond to the question, but suggests you can't have a phone to call your lawyer. So in closing, we would ask that the trial court errant in refusing to suppress the statement, it should be suppressed, and I believe the evidence would be insufficient. Without the statement, double jeopardy would apply and he could not be retried. But in the event there's a less desired alternative, we just ask for a remand. Thank you, Mr. Johnson. The court thanks both attorneys for their evidence here today. The case will be taken up for advising after the short recess.